UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No.** 09-427 (FAB)

ALEXIS CANDELARIO-SANTANA [1],

    **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

Pursuant to the Fifth, Sixth, and Eighth Amendments of the United States Constitution, defendant Alexis Candelario-Santana ("Candelario") moves to strike the United States' notice of intent to seek the death penalty at the retrial of his case. (Docket Nos. 1481 and 1482.) For the reasons set forth below, the Court **DENIES** Candelario's motion. (Docket No. 1481.)

## I.  Background

In March 2013, Candelario was found guilty of violent crimes in aid of racketeering activity, drug trafficking offenses, and thirteen conspiracy-related murders pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") by a death-qualified jury. (Docket No. 985.) At the penalty phase of trial, the jury failed to reach a unanimous decision as to whether Candelario should receive the death penalty. (Docket No. 1051.)

In August 2013, Candelario received a life sentence. (Docket No. 1145.) Candelario appealed his sentence, and the First Circuit Court of Appeals vacated and remanded Candelario's case to the district court. United States v. Candelario-Santana, 834 F.3d 8 (1st Cir. 2016).

On November 5, 2018, Candelario moved to strike the United States' notice of intent to seek the death penalty at the retrial of his case. (Docket Nos. 1481 and 1482.) Candelario argues that: (1) the federal death penalty is unconstitutional because it "operates in an arbitrary, capricious, irrational, and invidious manner;" (2) "the evolving standards of decency that mark the progress of a maturing society render the [federal death penalty] unconstitutional;" (3) the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002), renders the Federal Death Penalty Act of 1994 ("FDPA") "inoperative;" (4) "the FDPA fails to provide a structure which permits jurors to make a reasoned choice between execution and a sentence of life in prison without the possibility of release;" (5) the United States' "notice of special findings" in the indictment "is not consistent with the requirements of the Fifth Amendment;" (6) "imposing a federal death penalty within the Commonwealth of Puerto Rico violates the [E]ighth Amendment and basic principles of representative government;" (7) "imposing the federal death penalty in this case

would violate Section 9 of the Puerto Rican Federal Relations Act;"

and (8) the government must "file an informative outline followed

by a hearing, to determine the reliability of evidence and

information to be presented in support of a sentence of [death]

and to apply Crawford v. Washington, 541 U.S. 36 (2004), to the

penalty-phase." (Docket No. 1481 at pp. 1-2.) The Court

disagrees.

## II. Legal Standard

"[I]t is settled that capital punishment is constitutional."

Glossip v. Gross, 135 S. Ct. 2726, 2732 (2015) (citation omitted);

see Gregg v. Georgia, 428 U.S. 153, 181-87 (1976). Statutes duly

enacted by Congress, such as the FDPA, are "presumed to be

constitutional." United States v. Sampson, 486 F.3d 13, 20 (1st

Cir. 2007) (citing INS v. Chada, 462 U.S. 919, 944 (1983)). The

burden of proving the FDPA's unconstitutionality thus rests with

the challenger. Id. (citing Lujan v. G & G Fire Sprinklers, Inc.,

532 U.S. 189, 198 (2001)). When the United States Supreme Court

has "directly decided an issue," this Court "must follow the case

[that] directly controls, leaving to [the Supreme] Court the

prerogative of overruling its own decisions." Id. (alterations in

original) (quoting Rodríguez de Quijas v. Shearson/Am. Express,

Inc., 490 U.S. 477, 484 (1989)).

## III. FDPA's General Constitutionality

Candelario's arguments regarding the FDPA's general constitutionality have been flatly rejected by binding precedent. See, e.g., McCleskey v. Kemp, 481 U.S. 279 (1987); Sampson, 486 F.3d 13.

### A.    Arbitrary and Capricious

Candelario's contention that the federal death penalty is unconstitutional because it "operates in an arbitrary, capricious, irrational and discriminatory manner" is unavailing. (Docket No. 1482 at p. 5.) Candelario asserts the same arguments as the defendant did in Sampson, that "because the federal death penalty is infrequently sought and even more infrequently carried out, its imposition is arbitrary and capricious, and therefore unconstitutional." Sampson, 486 F.3d at 23; see Docket No. 1482 at pp. 5-17. In Sampson, the First Circuit Court of Appeals denied the defendant's contention, holding that the Supreme Court "has made clear" that its concern regarding the arbitrariness of the death penalty is "not based on the frequency with which the death penalty [is] sought or imposed," but rather, whether the discretion exercised by juries is "guided so as to limit the potential for arbitrariness." Sampson, 486 F.3d at 23 (citing Gregg v. Georgia, 428 U.S. 153 (1976); Furman v. Georgia, 408 U.S. 238 (1972)). A death penalty statute must therefore "(1) rationally narrow the

class of death-eligible defendants and (2) permit a jury to render

a reasoned, individualized sentencing determination based on a

death-eligible defendant's record, personal characteristics, and

the circumstances of his crime."   Id. at 24 (internal quotation

marks omitted) (quoting Kansas v. Marsh, 126 S. Ct. 2516, 2524-25

(2006)).

        According to the First Circuit Court of Appeals, the

"FDPA fully meets the requirements of guided discretion, suitably

directing and limiting the leeway afforded to the decisionmakers."

Sampson, 486 F.3d at 24.   The frequency "with which the federal

death penalty is sought" does not "render the FDPA

unconstitutional."   Id.   "To the extent that there may be an

independent constitutional concern as to the decisional process by

which the government decides if it will seek the death penalty,

that process contains numerous safeguards built into an

articulated death penalty protocol."   Id. (citations omitted).

The FDPA process, "therefore, is not arbitrary."   Id. (citing

Gregg, 428 U.S. at 195).

        Like Candelario does here, the defendant in Sampson

argued that "the FDPA is unconstitutional because there is no

principled basis for distinguishing between those cases in which

the federal death penalty is imposed and those in which it is not,"

relying on case summaries to demonstrate discrepancies.   See

Sampson, 486 F.3d at 24; Docket No. 1482 at pp. 18-27.  The First Circuit Court of Appeals found the case summaries to be "wholly inadequate to prove that the death penalty has been imposed in an arbitrary manner."  Sampson, 486 F.3d at 25.

Candelario's identical argument and use of case summaries must be rejected.  See Docket No. 1482 at pp. 18-27. According to the First Circuit Court of Appeals, case summaries are "devoid of details" and "fail to account for the objective circumstances of the underlying crimes."  Sampson, 486 F.3d at 25. In Sampson, the First Circuit Court of Appeals held that "[e]ven the more detailed verdict sheets that [the defendant] submitted to the district court fail[ed] to establish arbitrary imposition of the death penalty."  Id.  The First Circuit Court of Appeals characterized the defendant's argument and case summaries as an "invitation to ignore individual differences across offenders and offenses" and held that there was "no principled basis for finding that similar cases are treated differently."  Sampson, 486 F.3d at 25.  This Court will not accept Candelario's use of case summaries to support a similar argument.

**B.    Race and Geography**

Although Candelario does not contend that the United States seeks the death penalty because of his race, the race of his victims, or the geographic location where he was charged,

Candelario asserts that "the FDPA is unevenly applied on a regional basis and suffers from intractable problems of racial discrimination in the targeting of minority defendants and a demonstrated race/gender-of-victim effect," rendering the FDPA unconstitutional. (Docket No. 1482 at p. 28.)[1]

Candelario's contentions are unavailing because the First Circuit Court of Appeals rejected the same arguments in Sampson. See Sampson, 486 F.3d at 26. In Sampson, the defendant argued that "the FDPA is unconstitutional because the death penalty is sought on the race of the defendant and victim and on the locale in which the defendant is charged" in violation of the Fifth and Eighth Amendments. Id. Like Candelario, the defendant based his claims "primarily on a 2000 [Department of Justice] study of the administration of the federal death penalty from 1988 to 2000, and on a 2001 supplemental report." Sampson, 486 F.3d at 26.[2] The First Circuit Court of Appeals rejected the defendant's arguments,

---

[1] It is questionable whether Candelario has standing to challenge the constitutionality of the federal death penalty on these grounds. "As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." Sampson, 486 F.3d at 25 (internal quotation marks omitted) (quoting County Court v. Allen, 44 U.S. 140, 155 (1979)). Because the Supreme Court has not directly decided this issue of standing and "death is . . . different," Gardner v. Florida, 430 U.S. 349, 357 (1977), the Court assumes that Candelario has standing to pursue these arguments for the purpose of this motion. See Sampson, 486 F.3d at 25.

[2] Candelario grounds his arguments in the same 2000 Department of Justice study and 2001 report, in addition to the declaration of Kevin McNally. (Docket No. 1482 at pp. 30-58.)

ruling that "[b]are statistical discrepancies are insufficient to prove a Fifth Amendment violation with respect to the implementation of a statute." Sampson, 486 F.3d at 26 (citing McCleskey, 481 U.S. at 292 ("[T]o prevail under the Equal Protection Clause, [a defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose.")). Because Candelario, similar to the defendant in Sampson, presents "no specific evidence of purposeful discrimination either against himself or against those southern and minority defendants upon whom he purports to base his claim," Sampson, 486 F.3d at 26, this Court rejects Candelario's Fifth Amendment challenges to the FDPA.

Candelario's Eighth Amendment race and geography claims also fail, because Sampson and McCleskey both reject Eighth Amendment claims based on statistical studies indicating race-based discrepancies in capital sentencing. See Docket No. 1482 at pp. 30-58; McCleskey, 481 U.S. at 312-13; Sampson, 486 F.3d at 26. According to McCleskey:

> Apparent disparities in sentencing are an inevitable part of our criminal justice system. . . . [O]ur consistent rule has been that constitutional guarantees are met when "the mode [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible." Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious.

McCleskey, 481 U.S. at 312-13 (second alteration in original) (citation omitted) (quoting Singer v. United States, 380 U.S. 24, 35 (1965)).  The statistics submitted by Candelario are no more probative than those rejected in McCleskey and Sampson.  The 2000 Department of Justice study "provides no basis for attributing the statistical discrepancies with respect to geography and race in FDPA prosecutions to discrimination rather than to other factors, such as differences in the nature of the crimes involved." Sampson, 486 F.3d at 26-27.

C.          **C.   Evolving Standards of Decency**

          Candelario's claims that "'the evolving standards of decency that mark the progress of a maturing society' have rendered the federal death penalty invalid as both cruel and unusual in violation of the United States Constitution" are unpersuasive. See Docket No. 1482 at p. 59.  In Sampson, the defendant similarly requested that the court "declare the death penalty unconstitutional as cruel and unusual punishment and a per se denial of due process in all cases."  Sampson, 486 F.3d at 27. The First Circuit Court of Appeals explained that this request is foreclosed by Chapman v. United States, 500 U.S. 543 (1991), Gregg, 428 U.S. 153, and Roberts v. Louisiana, 428 U.S. 325 (1976).  The Supreme Court has rejected the argument that the death penalty violates "standards of decency," ruling that "a large proportion

of American society continues to regard it as an appropriate and

necessary criminal sanction." Gregg, 428 U.S. at 179. This Court

is required to follow any Supreme Court case that "directly

controls, leaving to [the Supreme] Court the prerogative of

overruling its own decisions." Sampson, 486 F.3d at 20

(alterations in original) (quoting Rodríguez, 490 U.S. at 484).

Because Chapman, Gregg, Roberts, and Sampson are binding, this

Court rejects Candelario's claim that the death penalty itself is

unconstitutional. See Sampson, 486 F.3d at 28-29.

   **D.   Ring v. Arizona**

        Candelario's arguments pertaining to Ring were

explicitly rejected in Sampson. See Docket No. 1482 at pp. 82-

114; Sampson, 486 F.3d at 20-23. Candelario contends:

> The Supreme Court's Ring decision has rendered the
> federal death penalty unconstitutional and the Act may
> not be saved by a judicial "construction" that creates
> a new criminal offense whose elements and intertwined
> procedures have neither been considered, nor enacted
> into law, by Congress.

(Docket No. 1482 at p. 82.) Similarly, according to Sampson:

> In the wake of Ring, Supreme Court precedent now firmly
> establishes that the mental culpability and aggravating
> factors required by the FDPA must—in addition to being
> included in the government's notice to seek the death
> penalty—be presented to a grand jury, charged in the
> indictment, and proved beyond a reasonable doubt. But
> . . . even though this eliminates a background assumption
> against which the FDPA was framed, it does not render
> the statute unconstitutional.

Sampson, 486 F.3d at 21. Like Candelario, the defendant in Sampson
argued that Ring rendered the FDPA unconstitutional "and that
curing the problem would require the rewriting of the statute,
which is a legislative function." Sampson, 486 F.3d at 21; see
Docket No. 1482 at pp. 82-114. "The courts that have considered
this thesis[, however,] uniformly have rejected it." Sampson, 486
F.3d at 21 (citing cases). As stated by the First Circuit Court
of Appeals, "There is no irredeemable conflict between the FDPA
and Ring," and "allowing a grand jury to consider and charge
aggravating factors under the FDPA does not have any effect either
on the substantive aspects of the statute or on the discrete roles
that the statute assigns to the judge, the prosecutor, and the
jury, respectively." Sampson, 486 F.3d at 21, 23. Accordingly,
this Court rejects Candelario's arguments regarding Ring.

### E.    Incomprehensibility to Jurors

Candelario's claim that the FDPA process is
incomprehensible to jurors is unavailing. See Docket No. 1482 at
pp. 131-39. Candelario argues that "the FDPA fails to provide a
structure which permits jurors to make a reasoned choice between
a sentence of life in prison without the possibility of release
and execution." (Docket No. 1482 at p. 131.) Federal courts
across the nation have rejected identical contentions. See, e.g.,
United States v. Taylor, 635 F. Supp. 2d 1243, 1247 (D.N.M. 2009)

(citing cases). "There is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by [the] court or counsel." Id. (internal citation and quotation marks omitted). This Court agrees with the other federal courts and rejects Candelario's argument regarding the FDPA's alleged incomprehensibility to jurors. See Docket No. 1482 at pp. 131-139.

**F.   Special Findings**

The Court rejects Candelario's contention regarding the indictment's special findings. See Docket No. 1482 at pp. 115-130. Candelario argues:

> Even if the FDPA can be rendered constitutional by a finding by the grand jury of gateway and statutory aggravating factors, the "special findings" in the indictment should be stricken and the death notice should be dismissed because the government has not obtained an indictment consistent with the requirements of the Fifth Amendment.

Id. at p. 115. The Fifth Amendment, however, does not require the grand jury to be informed as to the ultimate punishment in a capital case. See United States v. Troya, No. 06-80171, 2008 WL 4327004, at *7 (S.D. Fla. Sept. 22, 2008) (citing U.S. Const. amend. V). Federal courts have routinely held that the United States is not required to inform grand juries returning capital indictments that the death penalty is a potential punishment. See,

e.g., Troya, 2008 WL 4327004, at *7-8 ("[T]he case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the special findings."); United States v. Lecco, No. 05-00107, 2007 WL 1074775, at *3 (S.D. W. Va. Apr. 5, 2007) ("[T]he Supreme Court has made clear that the Indictment Clause of the Fifth Amendment does not require the government to inform the grand jury of the potential penalties that might attach as a result of any special findings.").

This Court agrees with other federal courts that "[t]he grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual," but instead, to make an "independent factual determination of the existence of probable cause for the essential elements of the charged offense." United States v. Haynes, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) (citing Branzburg v. Haynes, 408 U.S. 665, 686-87 (2001); Stirone v. United States, 361 U.S. 212, 217-19 (1960)).

Candelario's request to strike the non-statutory aggravating factors "because they are not supported by the indictment" is precluded by precedent. See Docket No. 1482 at p. 123. Non-statutory aggravating factors do not need to be included in the indictment. See, e.g., Sampson, 486 F.3d at 20-23; United States v. Fell, 531 F.3d 197, 237-38 (2d Cir. 2008);

United States v. Rodríguez, 380 F. Supp. 2d 1041, 1051-52 (D.N.D. 2005) ("Other circuits . . . . have held that non-statutory aggravating factors need not be alleged in the indictment.") (citing cases). Accordingly, this Court rejects Candelario's arguments pertaining to the sufficiency of the indictment with regard to special findings.

## IV. FDPA's Constitutionality as Applied to Puerto Rico

Candelario's arguments regarding the FDPA's applicability to Puerto Rico have been squarely rejected by binding precedent. See, e.g., United States v. Acosta-Martínez, 252 F.3d 13 (1st Cir. 2001).

### A. Eighth Amendment of the United States Constitution

The Court rejects Candelario's position that enforcement of the federal death penalty in Puerto Rico violates the Eighth Amendment. (Docket No. 1482 at pp. 142-53.) In Acosta-Martínez, the First Circuit Court of Appeals held that "if Congress has made clear its intent that a federal statute apply to Puerto Rico, then the issue of whether a law is otherwise 'locally inapplicable' does not, by definition, arise." Acosta-Martínez, 252 F.3d at 18. Despite the Puerto Rico Constitution's prohibition of capital punishment, "the federal death penalty is intended to apply to Puerto Rico federal criminal defendants just as it applies to such defendants in the various states." Id. at 20. "[A] provision of

the Constitution of Puerto Rico does not trump a federal criminal statute" that otherwise applies to Puerto Rico.  Id.

Candelario's attempt to distinguish his case from Acosta- Martínez is unavailing.  Candelario asserts that the First Circuit Court of Appeals in "Acosta- Martínez did not consider . . . whether it is cruel and unusual punishment for the federal government to impose capital punishment on a citizen of Puerto Rico, for an alleged crime committed in Puerto Rico against another Puerto Rican citizen." (Docket No. 1482 at p. 147.)  Candelario, however, is a United States citizen, and the federal government has authority to regulate his criminal conduct.  See Heath v. Alabama, 474 U.S. 82, 93 (1985) (holding that the United States "has the right" to "vindicate[] a violation of the 'peace and dignity' of the Federal Government").  Accordingly, the Court rejects Candelario's claim that the enforcement of the federal death penalty in Puerto Rico violates the Eighth Amendment.

**B.    Puerto Rican Federal Relations Act**

Candelario's argument that the FDPA violates the Puerto Rican Federal Relations Act is directly rejected by Acosta-Martínez, 252 F.3d at 18-19.  According to the First Circuit Court of Appeals, Puerto Rico is not exempt from the FDPA.  Id. at 19. The First Circuit Court of Appeals held:

> The approval by Congress of the Puerto Rico Constitution
> did not express any intent that federal penalties for
> federal crimes would apply elsewhere except Puerto Rico.
> "The Congressional intent behind the approval of the
> Puerto Rico Constitution was that the Constitution would
> operate to organize a local government and its adoption
> would in no way alter the applicability of United States
> laws and federal jurisdiction in Puerto Rico.

Id. at 18 (quoting United States v. Quiñones, 758 F.2d 40, 43 (1st Cir. 1985)).  Indeed, Candelario concedes that binding precedent prevents success on his claim regarding the Puerto Rican Federal Relations Act.  (Docket No. 1483 at pp. 140-41.)  Accordingly, the Court rejects Candelario's contention that the FDPA violates the Puerto Rican Federal Relations Act.

## V.   Request for Informative Outline

Candelario requests that the Court "require a detailed offer of proof and schedule a hearing to test the relevance, reliability and admissibility of the government's aggravating factors evidence."  (Docket No. 1482 at p. 70; see id. at pp. 70-81.) Candelario states that the United States provided insufficient notice of two statutory aggravating factors and all non-statutory aggravating factors.  Id. at pp. 77-78.  He also "seeks a detailed proffer which identifies all witnesses and documents and other evidence which the government intends to present to the jury with regard to victim impact."  Id. at p. 81.

Candelario's requests are unavailing.  The FDPA requires the United States to provide notice of its intent to seek the death penalty but not its evidence in support of the factors requested. See 18 U.S.C. § 3593(a); United States v. LeCroy, 441 F.3d 914, 921-30 (11th Cir. 2006).  The United States filed and served Candelario with a Notice of Intent to Seek the Death Penalty on July 8, 2012.  (Docket No. 458.)  In 2013, the United States presented evidence to establish the aggravating factors during trial.  Candelario thus received proper notice of the aggravating factors, in addition to the opportunity to preview the evidence at trial.

It is within the Court's discretion to grant a pre-trial reliability hearing if the defendant demonstrates necessity for such procedure.  See United States v. Solomon, 513 F. Supp. 2d 520, 539 (W.D. Pa. 2007); United States v. Llera-Plaza, 179 F. Supp. 2d 464, 469 (E.D. Pa. 2001).  The FDPA provides that the Federal Rules of Evidence, however, do not apply during the penalty phase of trial.  See 18 U.S.C. § 3593(c).  Consequently, the FDPA establishes "very low barriers" for the admissibility of information.  United States v. Basham, 561 F.3d 302, 331 (4th Cir. 2009).  In Gregg, the Supreme Court encouraged the introduction of as much information as helpful to assist the jury in determining whether to impose a death sentence.  Gregg, 428 U.S. at 203-04

("[S]o long as the evidence introduced and the arguments made at the pre-sentence hearing do not prejudice a defendant, it is preferred not to impose restrictions.  We think it desirable for the jury to have as much information before it as possible when it makes a sentencing decision."). Candelario has failed to establish any need to preview the United States' evidence, especially given the existence of the record from the prior trial and the low hurdle for admissibility in the penalty phase.

Because Candelario received sufficient notice, fails to demonstrate any "danger of surprise," see United States v. Cooya, No. 08-70, 2011 WL 5878382, at *2 (M.D. Pa. Nov. 23, 2011), and fails to establish any necessity for a hearing to preview the evidence, the Court **DENIES** Candelario's requests for informative outlines and a hearing to preview the evidence.

## VI. Conclusion

For the reasons set forth above, Candelario's motion to strike the United States' notice of intent to seek the death penalty at the retrial of his case (Docket No. 1481) is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 18, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE